**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                              No. CR 09-0592 JB

MARSHA DIANE COLAIEZZI,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Downward Departure from the Guideline Sentencing Range, filed July 30, 2010 (Doc. 46); and (ii) the Defendant's Supplement to Motion for Departure from Sentencing Guideline Range and Motion for Variance, filed November 1, 2010 (Doc. 51). The Court 'held a hearing on November 12, 2010. The primary issues are: (i) whether the Court should depart downward because Defendant Marsha Colaiezzi presents an extraordinary physical condition under U.S.S.G. § 5H1.4, which states that "[p]hysical condition . . . may be relevant in determining whether a departure is warranted . . . [;] [a]n extraordinary physical impairment may be a reason to depart downward; . . . ."; and (ii) whether the Court should vary from the advisory Guideline range to a time-served sentence. The Court will depart downward and vary from the advisory Guideline range to a time-served sentence.

M. Colaiezzi married Jacob Guerena, with whom she had two children. M. Colaiezzi and Guerena later divorced, and she married Perry Colaiezzi in 1981 in Ontario, Canada. P. Colaiezzi adopted her two children from her previous marriage. In approximately 2007, the couple separated because of P. Colaiezzi's infidelity. M. Colaiezzi asserts that it is difficult to receive a divorce in

Canada, as a couple is required to be separated for one year before filing for a divorce. She further indicates that the divorce has been contentious, and that she and P. Colaiezzi have had contact only through their attorneys. M. Colaiezzi states that, since her involvement in this offense, her children have not spoken to her. M. Colaiezzi asserts that her children believe that she should have stayed with P. Colaiezzi, because he could have supported her financially.

On February 21, 2009, a New Mexico Sheriff's Deputy conducted a traffic stop on a Dodge Caravan, because the driver was not wearing a seatbelt. The driver, M. Colaiezzi, seemed nervous to the officer. The officer requested to see her driver's license, vehicle registration, and proof of insurance. He learned that the vehicle was a one-way rental vehicle, with a rental cost of over $1,000.00. The officer gave M. Colaiezzi a verbal warning for the traffic violation of not wearing a seatbelt and advised M. Colaiezzi that she was free to leave. Because the officer was suspicious that someone would pay so much money for a one-way rental for a minivan without needing the space the minivan provides, he asked M. Colaiezzi if she would be willing to answer a few more questions. As the officer asked about M. Colaiezzi's travel plans, he became more suspicious about her need to rent a minivan for space and why she was making a long drive to New York. The officer asked M. Colaiezzi for permission to search the vehicle, which she granted. He found approximately twenty-two kilograms of cocaine in the back of the vehicle and arrested M. Colaiezzi. M. Colaiezzi waived her rights and stated she just needed the money. She alleged that she knew she was transporting drugs, but did not know what drug she was transporting. M. Colaiezzi stated that, a few weeks earlier, a woman identified as "Cheryl" engaged her in conversation, and that during the conversation M. Colaiezzi mentioned her mounting bills and pending divorce. "Cheryl" told M. Colaiezzi that she could make some money transporting drugs for "Cheryl" and Cheryl's boyfriend "Robert." M. Colaiezzi at first declined the offer, but later agreed, because she desperately needed

the money.

M. Colaiezzi suffers from a progressive neurological disorder of an uncertain origin. In 2004, she began experiencing tremors in her hands and head. She continued to experience muscle tremors and developed diffuse muscular pain. M. Colaiezzi was arrested on February 21, 2009. In May 2009, M. Colaiezzi was diagnosed with "Chronic Arthritis, Pain Syndrome" and "Non-Specific Movement Disorder." Presentence Investigation Report ¶ 43, at 13 (disclosed March 4, 2010)("PSR"). The disorder has now progressed to the point that M. Colaiezzi is unable to walk without the aid of a walker. At her sentencing hearing, M. Colaiezzi was in a wheelchair. Her mother died in her mid-fifties after similar neurological degeneration, and M. Colaiezzi's daughter is presently experiencing similar neurological problems. M. Colaiezzi's doctor has noted that her degenerative neurological disorder is progressing rapidly, and she may not have much time left.

The PSR calculated M. Colaiezzi's base offense level at 31. It calculated a 2-level reduction pursuant to U.S.S.G. § 2D1.1(b)(11), because the United States represented that M. Colaiezzi provided all evidence and information she had concerning the instant offense. The PSR also calculated a 2-level reduction pursuant to U.S.S.G. § 3B1.2, as the parties agreed pursuant to the plea agreement that she played the role of a minor participant. The Court will accept the stipulation that M. Colaiezzi was a minor participant, because it appears from the information available to the Court that she was not more than a courier. Finally, the PSR calculated a 3-level reduction pursuant to U.S.S.G. § 3E1.1, because M. Colaiezzi demonstrated an acceptance of responsibility for the offense of conviction. This resulted in a total offense level of 24.

The Court will grant M. Colaiezzi's request for a downward departure pursuant to U.S.S.G. § 5H1.4. U.S.S.G. 5H1.4 states:

Physical condition . . . may be relevant in determining whether a departure is

> warranted, if the condition . . . is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4. After a careful review of the materials submitted to the Court, and after seeing the dramatic deterioration in M. Colaiezzi's health at the sentencing, the Court believes a departure is appropriate. The Court has seen many cases and situations in which people mention their medical conditions, but the Court is convinced this is an extraordinary medical condition that does not fall in the heartland of cases. The Court concludes that M. Colaiezzi's physical condition has significantly deteriorated and is concerned that the Bureau of Prisons is not likely able to adequately handle M. Colaizzei's physical condition. M. Colaiezzi appeared in the courtroom for her sentencing in a wheelchair. While the Court has a high degree of comfort that the Bureau of Prisons can deal with most medical issues, the Court is concerned about her condition being manageable by a prison. M. Colaiezzi currently lives with her nephew in a trailer park in Arizona. Her nephew intends to stay with her as long as he is needed. He drives her around, because she cannot drive. He drove her to the sentencing hearing, and was present during the hearing. The Court believes these considerations justify a departure from the Guideline range. The Court will grant a downward departure of 13 levels. The offense level after the downward departure is 11, and the criminal history category is I. The Guideline imprisonment range for an offense level of 11 and criminal history category of I is 8 to 14 months. The downward departure of 13 levels gets the Court to Zone B. The United States represented that it did not object to a downward departure of 13 levels or to Zone B. Section 5C1.1 of the Guidelines states:

> (b) If the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required, unless the applicable guideline in Chapter Two expressly requires such a term.

(c) If the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by --

> (1) a sentence of imprisonment; or
>
> (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or
>
> (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

(d) If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by --

> (1) a sentence of imprisonment; or
>
> (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e). provided that at least one-half of the minimum term is satisfied by imprisonment.

(e) Schedule of Substitute Punishments:

> (1) One day of intermittent confinement in prison or jail for one day of imprisonment (each 24 hours of confinement is credited as one day of intermittent confinement, provided, however, that one day shall be credited for any calendar day during which the defendant is employed in the community and confined during all remaining hours);
>
> (2) One day of community confinement (residence in a community treatment center, halfway house, or similar residential facility) for one day of imprisonment;
>
> (3) One day of home detention for one day of imprisonment.

U.S.S.G. § 5C1.1. Even with a 13 level departure, Zone B requires that at least one month be satisfied by imprisonment or a sentence of probation that includes substitute intermittent confinement, community confinement, or home detention. The Court cannot statutorily place M.

Colaiezzi on probation, because 21 U.S.C. § 841(b)(1)(A) states that "the court shall not place on probation . . . any person sentenced under this subparagraph." 18 U.S.C. § 841(b)(1)(A). The Court will not impose further imprisonment, and, because it cannot under the statute place M. Colaiezzi on probation for this crime, the Court must vary from the policy in U.S.S.G. § 5C1.1(c)(2) to reach a time-served sentence. Zone B allows a defendant to serve half of a term imprisoned and half of a term in home detention, provided that at least one month is satisfied by imprisonment. See 5C1.1(c), (e).[1] To approximate as much as possible the policy set forth in U.S.S.G. § 5C1.1, the Court will, as a condition of supervised release, place Colaiezzi on electronic monitoring for 8 months, which is the sentence at the lower end of the sentencing range after the 13-level departure. The Court believes that, although Colaiezzi will be under electronic monitoring for the entire 8 months, instead of 4 months, this most closely approximates the policy set forth in U.S.S.G. § 5C1.1. Because of her condition, she is unable to travel much anyway.

In arriving at M. Colaiezzi's sentence the Court has considered not only the Guidelines, but other sentencing goals. The Court has first considered the Guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment set forth in the advisory Guideline range, even after the substantial departure, is not appropriate for this sort of offense. The Court believes that a number of factors, taken in combination, justify a variance from the Guideline range. The nature and circumstances of the crime, and M. Colaiezzi's history and characteristics, counsel a variance because, in part, the

---

[1] The statement "provided at least one month is satisfied by imprisonment," U.S.S.G. § 5C1.1(c)(2), appears to contemplate a sentence in which the Guidelines provide for a low sentence. In this case, the Court had to vary from the Guideline sentencing range after the 13 level departure, because Zone B requires at least one month of the defendant's term satisfied by imprisonment, and the Court did not believe that it should impose further imprisonment.

facts suggest that M. Colaiezzi was a person who made a poor judgment during a difficult period in her life. The need for specific deterrence is not necessary, because of M. Colaiezzi's deteriorating condition. Incarceration is also not necessary to protect the public from further crimes by M. Colaiezzi. This sentence will not detract from general deterrence, as no one would purposefully put themselves in M. Colaiezzi's position to avoid a stiff penalty. The Court also believes a variance is necessary so that M. Colaiezzi can receive effective medical care. While a slightly higher sentence could be just punishment for this crime, the Court believes that the parsimony clause pushes this sentence to a time-served sentence. The Court does not believe further incarceration is necessary to provide a just punishment in this case. The Court believes that a time-served sentence fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). A time-served sentence reflects the seriousness of the offense and the circumstances of the case, promotes adequate respect for the law, provides just punishment, affords adequate deterrence, will protect the public, and will allow M. Colaiezzi to receive the medical assistance she needs. And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted), the Court believes a time-served sentence is reasonable and sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. The Court therefore imposes a sentence of four days or time served, whichever is less. As part of the term of supervised release, the Court will impose electronic monitoring as a condition to home detention for a period of eight months. M. Colaiezzi is placed on supervised release for a term of three years. Based on M. Colaiezzi's limited resources and the

United States' expression of not being interested in pursuing a fine, the Court will not impose a fine. Based on the United States' willingness to waive a special assessment of $100.00, the Court will not impose one.

**IT IS ORDERED** that the Court will grant the Motion for Downward Departure from the Guideline Sentencing Range, filed July 30, 2010 (Doc. 46), and the Defendant's Supplement to Motion for Departure from Sentencing Guideline Range and Motion for Variance, filed November 1, 2010 (Doc. 51).

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Elaine Y. Ramirez
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Richard A. Winterbottom
  Federal Public Defender
Federal Public Defenders Office
District of New Mexico
Albuquerque, New Mexico

    *Attorney for the Defendant*